IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| DAVID TURKYILMAZ,<br><br>               Plaintiff,<br>v.<br><br>CAROLYN W. COLVIN, Acting<br>Commissioner of Social Security,<br><br>               Defendants. | No. 13 C 4324<br><br>Magistrate Judge Susan E. Cox |

**ORDER**

Plaintiff's motion for summary judgment is granted [dkt. 12]. We remand to re-examine the treating physician's opinion using the factors set forth in 20 U.S.C. § 404.1527. Defendant's motion for summary judgment is denied [dkt. 19].

**STATEMENT**

Plaintiff David Turkyilmaz appeals the final decision of the Commissioner of Social Security denying him Social Security disability benefits under Title II of the Social Security Act.[1] After careful review of the record, the Court now remands the decision of the Administrative Law Judge ("ALJ") for further proceedings consistent with this opinion.

**I.    BACKGROUND**

Plaintiff was injured at work in 2007 when a garage door fell on his head. As a result, he suffered a disc herniation at C5-C6.[2] He developed radicular symptoms, and underwent a

---
[1] *See* 42 U.S.C. §§ 404(g), 216(i), 223(d).
[2] R. at 22.

discectomy and anterior cervical fusion on February 17, 2009.[3] Since the surgery, plaintiff has reported an increase in pain in his neck and lower extremities, numbness in his hands and face, and headaches.[4]

Plaintiff filed a Title II application for disability benefits in 2010, alleging disability beginning August 1, 2008.[5] His claim was denied twice, and a hearing was held on February 28, 2012.[6] The ALJ found on April 2, 2012 that plaintiff had a severe impairment due to cervical radiculopathy and obesity, but this impairment did not meet or medically equal the severity of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1.[7] In her determination of the plaintiff's Residual Functioning Capacity ("RFC"), the ALJ found that plaintiff's impairments constrained him to sedentary work[8] with limitations, including the need to take frequent breaks and change position.[9] The ALJ found no manipulative limitations.[10]

The ALJ used the required five-step procedure to determine the plaintiff's eligibility for benefits: (1) was the claimant engaged in substantial gainful activity; (2) does the claimant have an impairment or combination of impairments that is severe; (3) does the claimant's impairment(s) meet or medically equal a listed impairment; (4) can the claimant perform past relevant work with his impairment(s); (5) are there any viable jobs the claimant can perform considering his impairment(s)?[11]

---

[3] *Id.*
[4] R. at 24.
[5] R. at 18.
[6] *Id.*
[7] R. at 22.
[8] 20 C.F.R. § 404.1567(a).
[9] R. at 23.
[10] R. at 25.
[11] *See* 20 C.F.R. §§ 404.1520, 416.920.

To make her decision regarding the plaintiff's RFC, the ALJ gave "significant weight" to the testimony of Hilda Martin, M.D.[12] Dr. Martin was a State Agency physician retained by the Social Security Administration ("SSA") to give expert testimony at plaintiff's hearing.[13] Dr. Martin did not treat or examine plaintiff at any point, but was familiar with the Social Security Regulations and was able to review the entire record.[14] She opined that, while plaintiff complained of numbness in his hands, there was no objective medical evidence that the numbness had any appreciable impact on the use of his hands.[15] She also opined that plaintiff's different performances during two closely-scheduled examinations of his neck, one of which was a consultative examination for the purposes of the benefits determination, suggested pain magnification.[16] The ALJ relied on these opinions in her determination.

The ALJ also relied on the opinions of reviewing State physicians and a physical therapist—giving them "some weight"—both of whom believed plaintiff was capable of performing some level of work.[17] Specifically, Kern Singh, M.D., a spine surgeon, examined plaintiff for a worker's compensation claim on May 3, 2010,[18] and a team of physical therapists who, after the work incident, conducted post-fusion surgery physical therapy with plaintiff.[19]

The ALJ gave "no controlling weight or great weight" to Michael Zindrick, M.D., plaintiff's treating physician since 2008.[20] Since August 18, 2010, Dr. Zindrick has repeatedly offered the opinion that plaintiff was and is permanently disabled and thus unable to work.[21] The

---

[12] R. at 22, 25-26.
[13] *Id*.
[14] R. at 42.
[15] R. at 25.
[16] *Id*.
[17] R. at 26.
[18] R. at 719-20.
[19] R. at 791-93.
[20] R. at 708.
[21] R. at 695.

ALJ explained that Dr. Zindrick's opinion was "extreme," in conflict with the other medical testimony, and inconsistent with the record.[22]

## II.  LEGAL STANDARD

Review by this Court of the Commissioner's final decision is authorized by 42 U.S.C. § 405(g). When reviewing the ALJ's decision, this Court uses a deferential standard of review,[23] and may not reconsider evidence, nor make any independent credibility determination.[24] There must be a "logical bridge" between the facts of record and the ALJ's conclusion.[25] However, reversal is not warranted simply because reasonable minds may disagree on the correct interpretation of the evidence.[26] The ALJ's determination will be upheld if it is supported by substantial evidence[27] and reversal on the facts is only warranted where the record "compels" such a finding.[28] This Court must reverse if there is an error of law, even if the evidence adequately supports the conclusion.[29]

## III.  DISCUSSION

The plaintiff has raised several arguments supporting reversal of the Commissioner's decision. We will review the weight the ALJ gave to Dr. Zindrick, plaintiff's treating physician, and within the ALJ's credibility analysis, her explanation of plaintiff's hand and neck limitations.

---

[22] R. at 26.
[23] *Dixon v. Massanari*, 270 F.3d 1171, 1176 (7th Cir. 2001).
[24] *Skinner v. Astrue*, 478 F.3d 836, 841 (7th Cir. 2007).
[25] *Roddy v. Astrue*, 705 F.3d 631, 636 (7th Cir. 2013).
[26] *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008) (quotations omitted).
[27] *See* 42 U.S.C. § 405(g).
[28] *Borovsky v. Holder*, 612 F.3d 917, 921 (7th Cir. 2010).
[29] *Schmoll v. Harris*, 636 F.2d 1146, 1150 (7th Cir. 1980).

**Treating Physician's Opinion**

Plaintiff contends that the ALJ improperly set aside the opinion of treating physician Dr. Zindrick, who found that plaintiff was "permanently disabled from gainful employment" due to the significant level of pain in his neck.[30] Dr. Zindrick is a specialist in spine disorders, and treated plaintiff for symptoms consistent with a diagnosis of cervical radiculopathy (diagnosed by treating surgeon Robert Kazan, M.D., F.A.C.S.[31]) after his fusion surgery.[32] Dr. Zindrick began seeing plaintiff for his spinal condition in 2008, and saw him regularly through 2011.[33] Plaintiff argues the ALJ made a "serious omission"[34] when she did not fully and specifically address what weight she gave Dr. Zindrick's opinion that the plaintiff could no longer work.

The treating physician rule states that "[a] treating physician's opinion that is consistent with the record is generally entitled to 'controlling weight.'"[35] "In many cases, a treating source's medical opinion […] should be adopted, even if it does not meet the test for controlling weight.[36]" If a treating physician is given less than controlling weight, the ALJ should not simply reject the opinion.[37] Instead, the ALJ must evaluate it using the factors in Title 20, § 404.1527 of the Code of Federal Regulations.

The ALJ briefly addresses the fact that she has given "no controlling weight or great weight" to Dr. Zindrick's opinion.[38] She explains that Dr. Zindrick's opinion that plaintiff is unable to work is "inconsistent with other opinions of record" and an "extreme opinion" for which he did not have enough medical evidence. As support for her conclusion, she specifically

---

[30] R. at 694-95.
[31] R. at 395.
[32] *See* R. at 697-704.
[33] R. at 708, 814-16.
[34] *Roddy*, 705 F.3d at 636.
[35] *Jelinek v. Astrue*, 662 F.3d 805, 811 (7th Cir. 2011), *citing* 20 C.F.R. § 404.1527(d)(2).
[36] S.S.R. 96-2p.
[37] *Id.*
[38] R. at 26.

cites to a consultative examination, done in conjunction with a prior work-related claim, and the functional capacity evaluations done as a part of plaintiff's post-fusion work therapy program.[39] Both examinations put plaintiff's abilities on par with light work.[40]

However, the ALJ never directly evaluates Dr. Zindrick's opinion, nor does she explicitly discuss why his opinion is inconsistent with his own findings or the record as a whole beyond the examination and evaluation. It is error to leave the weight assigned to a treating physician's opinion up to speculation.[41] The Commissioner argues the weight is clear, as the ALJ's failure to address Dr. Zindrick's opinion suggests that she rejected it entirely. But we can find no such clarity in the statement that he was given "no controlling weight or great weight" without additional discussion of Dr. Zindrick's opinion or any other aspect of his care for plaintiff. The ALJ is responsible for building a logical bridge between the evidence and her conclusions.[42] By failing to address the factors when evaluating the treating physician's opinion, the ALJ fails to create that logical bridge.[43]

In addition to neglecting to fully address Dr. Zindrick's opinion, the ALJ does not directly address the factors in § 404.1527.[44] Those factors give more weight to the testimony of a physician who has (1) examined the claimant, (2) sustained a long-term treating relationship with the claimant, (3) specialized in the claimant's condition, (4) performed diagnostic tests, and (5) offered opinions consistent with the remainder of the record.[45] The ALJ's basis for rejecting Dr.

---

[39] *Id.*
[40] R. at 26.
[41] *See* 20 C.F.R. § 404.1527(d)(2); *see also Harris v. Astrue*, 646 F.Supp.2d 979, 998 (7th Cir. 2009).
[42] *Roddy*, 705 F.3d at 636.
[43] *Id.*
[44] *Campbell v. Astrue*, 627 F.3d 299, 308 (7th Cir. 2010)("The ALJ's decision indicates that she considered opinion evidence in accordance with §§ 404.1527 and 416.927. However, the decision does not explicitly address the checklist of factors as applied to the medical opinion evidence."), *citing* 20 C.F.R. § 404.1527.
[45] *Roddy*, 705 F.3d at 636, *citing* 20 C.F.R. § 404.1527(c)(2)(i),(ii).

Zindrick's opinion is in theory consistent with the fifth factor, which gives more weight to opinions consistent with the record as a whole. However, the ALJ never explicitly addresses the factors in making her conclusion.[46]

The Commissioner also contends that as a result of inconsistencies between the record and Dr. Zindrick's opinion, the opinion cannot be given controlling weight. It is true that an ALJ may reject a treating physician's opinion if it is inconsistent with the record and unsupported by medical findings.[47] But an ALJ cannot simply neglect to address a treating physician's opinion and dismiss it without addressing the five factors.

Ultimately, we find the ALJ's cursory evaluation insufficient.[48] Similar to *Roddy v. Astrue*, where the ALJ only gave the treating doctor's opinion a cursory glance in the span of a short paragraph, here the ALJ only briefly addressed Dr. Zindrick's opinion.[49] In *Roddy*, the Seventh Circuit held the ALJ erred because he "should have, but did not, explain why [the treating physician's] opinion about the severity of Roddy's pain is inconsistent" with the doctor's findings.[50] Because the physician had a long-term relationship with the plaintiff and specialized in the area of the plaintiff's affliction, the court held that "significant weight" should have been given to his opinion.[51] Similarly, because Dr. Zindrick has consistently treated plaintiff since 2008,[52] and he is a specialist in spinal conditions like plaintiff's[53] (whereas the medical expert

---

[46] *Id.*
[47] *Dixon*, 270 F.2d at 1177.
[48] *Roddy*, 705 F.3d at 636 (finding that the ALJ did not provide a logical bridge between the evidence and his conclusion when he rejected a treating physician's opinion because he failed to analyze the opinion thoroughly enough to make it clear why it was rejected in favor of a reviewing physician's opinion, and failed to explicitly address the factors found in 20 C.F.R. § 404.1527 when assigning the treating physician's opinion weight.)
[49] *Id.*
[50] *Id.*
[51] *Id.*
[52] *See* R. at 708, 814-16.

the ALJ relied on, Dr. Martin, specializes in internal and pulmonary medicine[54]), his opinion would seem worthy of additional explanation by the ALJ.

**Hands**

Plaintiff contends that the ALJ erred in the fourth and fifth steps of her RFC analysis because she did not adequately consider the "significant and substantial evidence of record" that plaintiff has manipulative limitations due to pain and numbness in his hands. An RFC analysis must consider all relevant evidence of impairments, whether they are severe or non-severe.[55] Non-severe impairments can ultimately have a crucial effect on the RFC determination when combined with other impairments.[56] Plaintiff makes note that 96-9p states that "any significant manipulative limitation" results in a "significant erosion" of the base of work available for people under 50 years old who are limited to sedentary work.[57]

In deciding plaintiff retained his ability to use his hands for work, the ALJ again relied on the testimony of Dr. Martin, the State's reviewing physician. Dr. Martin opined the overall record did not establish any problems with plaintiff's ability to grip or move his hands and fingers. Dr. Martin also relied in turn on the results from the consultative exam conducted in 2008 by Dr. Singh, a State examining physician.[58] In his report Dr. Singh opined plaintiff could return to his prior work despite his reported symptoms.[59]

---

[53] *Michael R. Zindrick, M.D.*, Hinsdale Orthopaedics (last visited June 14, 2014), http://www.hinsdale-orthopaedics.com/physicians/michael-r-zindrick-md.
[54] R. at 42.
[55] *Young v. Barnhart*, 362 F.3d 995, 1000 (7th Cir. 2004); 20 C.F.R. § 404.1545(a)(1).
[56] SSR 96-8p.
[57] SSR 96-9p.
[58] R. at 25.
[59] *Id*.

But plaintiff points to numerous complaints he has consistently made since approximately June of 2009 of pain and numbness in the record,[60] test results from an electromyogram showing a slight loss of sensation in his right hand,[61] and his prescription of gabapentin, which is used to treat neuropathic pain.[62] He argues that all of this supports his assertion that the ALJ should have found he has manipulative limitations. In addition, he cites to the definition of "cervical radiculopathy," which includes radicular pain and loss of sensation in the extremities.[63] Lastly, plaintiff also testified that he continued to experience numbness and weakness in his hand.[64]

Generally speaking, if the claimant has been found to be suffering from an impairment, the Commissioner may not discount testimony regarding the symptoms even if there is no objective medical proof the claimant is experiencing those symptoms.[65] *Carradine v. Barnhart* provides an illustration of these principles. In *Carradine*, the court remanded because the ALJ had discredited the plaintiff's testimony based on "serious errors in reasoning rather than the demeanor of the witness.[66]" One of those errors was discrediting the plaintiff's complaints of pain due to a lack of physical evidence.[67] This was an error in reasoning because the ALJ discounted the plaintiff's pain testimony, even when plaintiff had been diagnosed with a

---

[60] R. at 393, 449, 692, 694, 697, 814, 841.
[61] R. at 328, 749.
[62] R. at 453.
[63] *What is Cervical Radiculopathy?* Spine-Health (last visited June 24, 2014), http://www.spine-health.com/conditions/neck-pain/what-cervical-radiculopathy.
[64] R. at 85.
[65] *Carradine v. Barnhart*, 360 F.3d 751, 753 (7th Cir. 2004)(*citing Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1996).)
[66] *Id*.
[67] *Id*.

somatization disorder and doctors had been continually treating the plaintiff for her pain, treatment which included multiple surgical spinal implants.[68]

In the present case, the ALJ did not entirely dismiss plaintiff's testimony, nor does she display similar errors in reasoning. Rather, she addressed his complaints of numbness, albeit briefly, and did not find the numbness to be disabling.[69] In doing so, the ALJ specifically addressed the fact that "there are no clinical findings suggesting a weakening of the claimant's bilateral grip and there is no indication of any range of motion or sensory loss with the wrists and hands."[70] Indeed, there is substantial evidence in the record that, despite any reported numbness, plaintiff's hands retained their grip strength and normal abilities. For instance, plaintiff's treating physician noted that plaintiff "demonstrates no weakness with direct testing of the deltoids, biceps, triceps, wrist extensors, finger abductors and grip strength" even while recording plaintiff's subjective complaints regarding numbness.[71]

The regulations do not require the ALJ to determine an individual's minimum capacity but, rather, require the ALJ to determine "the *most* you can still do *despite* your limitations."[72] In addition, the ALJ only has to minimally articulate her reasoning.[73] She did not decide against manipulative limitations simply because she was ignoring plaintiff's symptoms but, rather, because there were no clinical findings showing he could not use his hands normally. Thus, the ALJ met her burden in considering the evidence in the record regarding manipulative limitations.

---

[68] *Id.* at 755.
[69] R. at 25.
[70] *Id.*
[71] R. at 697, *see also* R. at 698 ("[u]pper extremity motor, sensory and reflex examination is normal."), 699 ("[…] no evidence of weakness in deltoids, biceps, triceps, wrist extensors, finger abductors and grip strength."), 700-04.
[72] 20 C.F.R. § 404.1520(b)(emphasis added).
[73] *Filus v. Astrue*, 694 F.3d 863, 869 (7th Cir. 2012).

**Neck**

Plaintiff contends that the ALJ ignored or discredited portions of plaintiff's testimony when making her adverse credibility finding regarding his neck pain. The ALJ explained that she found plaintiff to be less than credible because of his disparate performances in two tests of the range of motion in his neck, his demonstration of multiple Waddell signs during a consultative examination with Dr. Singh (signifying pain has been exaggerated[74]) as well as Dr. Singh's overall evaluation plaintiff was exaggerating his symptoms.[75] The ALJ also referred to his results from physical therapy and work hardening therapy, which deemed him physically capable of light work.[76]

Because the ALJ is uniquely situated to assess a witnesses' credibility, this Court reviews her credibility analysis deferentially.[77] We will only reverse a credibility determination if it is "patently wrong."[78] A credibility determination is only patently wrong when it "lacks any explanation or support" in the record.[79]

In making her credibility decision, the ALJ includes the following common conclusion that "the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment."[80] The Seventh Circuit has been sharply critical of the use of this language,

---

[74] *Waddell's Signs*, Physiopedia (Last visited June 30, 2014), http://www.physio-pedia.com/Waddells_Sign.
[75] R. at 24-25.
[76] *Id.*
[77] *Craft v. Astrue*, 539 F.3d 668 (7th Cir. 2008), *citing Sims v. Barnhart*, 442 F.3d 536, 538 (7th Cir. 2006).
[78] *Jones v. Astrue*, 623 F.3d 1155, 1160 (7th Cir. 2010), *citing Castile v. Astrue*, 617 F.3d 923, 928-29 (7th Cir. 2010).
[79] *Elder*, 529 F.3d at 213 (*quoting Jens v. Barnhart*, 347 F.3d 209, 213 (7th Cir. 2004)).
[80] R. at 24.

calling it "meaningless" due the lack of insight it offers into the basis of the ALJ's decision.[81] It also is in "tension" with Social Security Ruling 96-7p, which prevents the ALJ from disregarding a claimant's statements regarding symptoms "solely because they are not substantiated by objective medical evidence."[82] However, as the Commissioner explains in her brief, the Seventh Circuit has reversed based on this language only where there is no further explanation provided whatsoever.[83]

As stated in *Arnold v. Barnhart*, "[i]n a case such as this, the claimant offers medical evidence that he suffers from a condition that might give rise to disabling symptoms but, because of the subjective nature of the symptoms, the ALJ's finding of severity depends on the claimant's testimony.[84]" While she may not ignore a claimant's reports of symptoms, "discrepancies between the objective evidence and self-reports may suggest symptom exaggeration,"[85] and she does not have to accept subjective complaints in direct contention with the remainder of the record.[86] It is proper for the ALJ to find, based on adequate evidence, the plaintiff's "subjective complaints need not be accepted insofar as they clash with other, objective medical evidence in the record."[87]

We find the ALJ provides evidence in her opinion for her adverse credibility finding. In particular, she notes that his performance with his personal doctor showed significant improvement from his performance with a State physician, which took place only three days

---

[81] *Bjornson v. Astrue*, 671 F.3d 640, 645 (7th Cir. 2012)(*quoting Parker v. Astrue*, 597 F.3d 920, 922 (7th Cir. 2010)).
[82] *Id*. at 646.
[83] *See Punzio v. Astrue*, 630 F.3d 704, 709 (7th Cir. 2011), *Bjornson*, 671 F.3d at 645, *Parker*, 597 F.3d at 922
[84] 473 F.2d 816, 822 (7th Cir. 2007).
[85] *Jones*, 623 F.3d at 1161.
[86] 473 F.3d at 823.
[87] *Id*.

prior.[88] The ALJ also addresses plaintiff's "significant gains" during his 29 sessions of physical therapy, as well as his satisfactory performance in a work hardening program.[89] In fact, plaintiff performed on the level of very heavy work during his work hardening sessions.[90] However, the ALJ ultimately dismissed this result due to its inconsistency with the medical expert's opinion, as well as the opinions of plaintiff's various other examining doctors (other than Dr. Zindrick) who consistently opined he was capable of light work.[91]

Plaintiff argues that the ALJ improperly "cherry-picked" evidence from the record to determine that plaintiff's subjective complaints were not credible. As an example, he points out that the ALJ's RFC determination ignores his testimony that he spends 70 percent of his day lying down due to pain (a fact his treating physician corroborated in his progress reports[92]). He also argues she was inconsistent in applying this testimony, as she used it to confirm plaintiff made an unsuccessful work attempt. He then claims the ALJ erroneously failed to consider his work record as proof of his credibility.[93] However, it is not sufficient to point out factual omissions in an ALJ's credibility determination.[94] This is partly because the ALJ is not required to address every piece of evidence in the record, although the ALJ "cannot ignore entire lines of contrary evidence."[95]

Here, plaintiff's contention that the ALJ completely ignored his testimony regarding his time spent lying down is in opposition with the ALJ's finding that the plaintiff was maximally capable of sedentary work with limitations, despite his higher performance during physical

---

[88] *Id.*
[89] *Id.*
[90] *Id.*
[91] R. at 26.
[92] R. at 694 ("[…] no tolerance for sitting, standing, or being on his feet without significant neck pain or discomfort.").
[93] R. at 108, 120.
[94] *Jens*, 347 F.3d at 213.
[95] *Arnett v. Astrue*, 676 F.3d 586, 592 (7th Cir. 2012).

therapy and work hardening.[96] In fact, the ALJ specifically mitigated her RFC conclusion based on plaintiff's complaints of intractable pain.[97] Additionally, because the ALJ did not discredit plaintiff's testimony entirely, it was not inconsistent for the ALJ to use the testimony to determine whether plaintiff's work attempt was successful, as the Commissioner maintains.

The Commissioner attempts to further the ALJ's reasoning by explaining that a majority of plaintiff's complaints that he had to lie down during most of the day were due to headaches, which only required minimal treatment.[98] However, neither party is allowed to supplement the ALJ's reasoning in their briefs; the ALJ must make the connection herself in her opinion.[99] Yet, if the evidence does not compel a different result,[100] and the ALJ's determination is grounded in evidence from the record, her opinion is not patently wrong.[101] As such, we find that the ALJ properly grounded her analysis of the plaintiff's credibility in the evidence provided in the record, and we defer to her conclusion.

## CONCLUSION

Plaintiff's motion for summary judgment is granted [dkt. 12]. We remand to re-examine the treating physician's opinion using the factors set forth in 20 U.S.C. § 404.1527. Defendant's motion for summary judgment is denied [dkt. 19].

**ENTER:**

**DATED**: July 11, 2014 /s/ Susan E. Cox
United States Magistrate Judge

---

[96] R. at 24-26.
[97] R. at 24.
[98] R. at 76.
[99] *See Securities and Exchange Commission v. Chenery Corporation, et al.*, 318 U.S. 80 (1943).
[100] *Borovsky v. Holder*, 612 F.3d 917, 921 (7th Cir. 2010); *Shideler v. Astrue*, 688 F.3d 306 (7th Cir. 2012).
[101] *Jens*, 347 F.3d at 213.

14